Scotty Lynn TAYLOR, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00072–CR.

Court of Appeals of Texas,
Texarkana.

Submitted June 14, 1999.

Decided June 15, 1999.

Matt Keil, Keil & Goodson, Craig L. Henry, Texarkana, for appellant.

Martin E. Braddy, Assistant District Attorney, Frank Long, Attorney, Sulphur Springs, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## O P I N I O N

Opinion by Justice ROSS.

Scotty Taylor appeals from his conviction for possession of between four and two hundred grams of a controlled substance. He was convicted by a jury, which assessed punishment at ninety-nine years' imprisonment and a $10,000.00 fine.

Taylor first contends that the trial court erred by refusing to permit him to pursue a Fourth Amendment claim attacking the search of a residence. The court ruled that he had no standing to bring such a claim. The evidence shows that Taylor drove to Donald Hall's house between 11:00 p.m. and midnight. Taylor went inside with two or three bags. The evidence shows that he and Hall had been friends for many years. Taylor deposited his bags in a back bedroom and took a shower. At about 3:00 a.m., local police received a tip from a confidential informant that Taylor was at the house and had drugs. An officer went to the house and confirmed that Taylor's car was there and set up a surveillance on the house, while another officer began preparations for obtaining a search warrant.

Shortly before 6:00 a.m., Taylor drove away from the house. The officers watched him pull over and park on the wrong side of the road. Taylor got out of the car and cleaned the windshield, then got back into the car and drove away. One officer followed him. After four blocks, the officer stopped Taylor for failing to "signal continuously one hundred feet before the intersection." The other officer also arrived, and they asked Taylor

to consent to a search. Taylor refused. The officers called for a canine unit, which arrived about twenty minutes later. The dog found nothing. Finally, after about an hour had passed, the officers arrested Taylor for "parking on roadway facing traffic."

The officers then impounded the car and took it to the police station, where they performed an inventory search. They found nothing. At 11:15 a.m., they obtained a search warrant for the car and searched it again. A large number of items were found in the car, but no drugs were located.[1]

Before the automobile search, officers executed a search warrant on the house at about 8:00 a.m. They found and seized Taylor's luggage. Inside the luggage they found five grams of cocaine and forty grams of amphetamines.

Taylor sought to suppress this evidence. The trial court refused to conduct a hearing and address the question on the merits because it concluded that Taylor had no standing to raise the issue.

■■ The term "standing" is often used in cases involving Fourth Amendment claims in this context, but this term has been replaced by the concept that a defendant must be able to show a legitimate expectation of privacy prior to asserting the claim. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A subjective expectation of privacy is treated as being legitimate if it is one that society is prepared to recognize as reasonable. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In applying this analysis, the Fourth Amendment protections are available if the defendant's expectation of privacy has a source outside of the Fourth Amendment, "either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.* at 439 U.S. 143 n. 12, 99

S.Ct. 421. Privacy interests are an element of a Fourth Amendment claim that the defendant has the burden of proving. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996); *Wilson v. State*, 692 S.W.2d 661, 669 (Tex.Crim.App.1984).

■■ To carry his burden of proof, the accused must normally prove that by his conduct he exhibited an intention to preserve something as private and that circumstances existed under which society is prepared to recognize his subjective expectation as being objectively reasonable. *Villarreal*, 935 S.W.2d at 138, *citing Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Some relevant factors in determining whether the subjective expectation was one that society was prepared to recognize as reasonable include whether the accused had some property or possessory interest in the place invaded, whether he was legitimately in the place invaded, whether he had the right to exclude others from the place, whether he took precautions typically taken by those seeking privacy, whether he put the place to some private use, and whether his claim of privacy is consistent with historical notions of privacy. *Villarreal*, 935 S.W.2d at 138.

An overnight guest is the type of individual the Court has explicitly acknowledged as having a legitimate expectation of privacy. *Minnesota v. Olson*, 495 U.S. 91, 99, 110 S.Ct. 1684, 109 L.Ed.2d 85, 94–95 (1990). In reaching that decision, the Court refused to apply a multi-factor test proposed by the state in deciding whether the defendant's relationship to the premises was adequate to permit him to raise a privacy claim. *Id.* 495 U.S. at 96–97, 110 S.Ct. 1684. Instead, the Court stated that the defendant's "status as an overnight guest alone is enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Id.*

1. The officers did find a small plastic bag with what was described as an unidentified white residue inside a magnetic key holder hidden behind the ashtray. There is, however, no testimony as to what that "residue" was.

The overnight guest is used by the Court in its analysis at one end of a spectrum, with the casual visitor anchoring the other end. Thus, the Court has again recently stated that the legitimate expectation of privacy does not extend beyond the overnight guest in a home to include one who is merely present with the consent of the homeowner. *Minnesota v. Carter*, 525 U.S. 83, —, 119 S.Ct. 469, —, 142 L.Ed.2d 373, 380 (1998). In *Carter*, the Court discussed *Olson* and its predecessors and concluded that a guest present only for a business transaction had no legitimate expectation of privacy and could not contest a search. In reaching that conclusion, the Court noted that they were not overnight guests, were there only a matter of hours, had no previous relationship with the owner, had no other purpose for their visit, and nothing suggested any degree of acceptance into the household. In short, it was simply a place for them to do business. *Id.*

In this case, the evidence shows that Taylor and Hill were boyhood friends, and their friendship indicates that their meeting was not solely for business purposes. Taylor had spent nights at Hill's house for years on an irregular basis. Unlike the cases cited above, however, at the time of the search, Taylor was not present in the residence.

■ The facts in this case do not precisely fit the definition of an overnight guest. It is clear that Taylor went to the house at night and that he showered there and visited with his friend. There is no suggestion that he slept there or otherwise behaved as an "overnight guest." His acts were more akin to those of a friend visiting during the day. Although he was indisputably there at night, the evidence indicates that his presence was not as the type of "overnight guest" discussed by the cases above. The State correctly points out that

there is no evidence of any intent to return to the house, and there is evidence that he had left items for a substantial length of time in a form of unpaid storage at Hall's house on previous occasions.

Application of the factors set out by the Texas Court of Criminal Appeals in *Villarreal* also tend to support a finding of no subjective expectation of privacy. Taylor had no property or possessory interest in the house, he had no form of dominion or control, and he did not have a key to the house. He merely left unlocked and otherwise unsecured bags in an unlocked room, and the evidence shows only that he showered in the house and visited with a friend. On the other side of the equation, he was legitimately there (before he left), and it is arguable that a person visiting a friend, who leaves his luggage in the friend's house, has a claim of privacy that is consistent with historical notions of privacy.[2]

We conclude that even in light of the Supreme Court's analyses in *Olson* and its progeny, the facts of this case are distinguishable. The evidence shows that Taylor had not truly been an overnight guest, and had left his unsecured bags in the residence, and that he had left bags there before in a type of storage. There is no proof that he intended to promptly return. The court could reasonably have concluded that any visit had terminated and that the bags had simply been left in Hall's care. This situation differs sufficiently from the cases involving an "overnight guest" to permit the trial court to conclude that Taylor no longer had an objectively reasonable expectation of privacy as to the property, or alternatively that Taylor's acts did not adequately show a genuine intention to preserve the items as being truly private. We find no error.

2. In other contexts, there is a lack of "standing" to contest the reasonableness of a search of abandoned property which occurs when the defendant intended to abandon the property and the decision to abandon was not due to police misconduct. *See Brimage v. State*, 918 S.W.2d 466, 507 (Tex.Crim.App.1994).

■ Taylor next contends that the court erred by failing to suppress evidence obtained from his automobile as a result of an illegal arrest.[3] He argues that the arrest was unlawful because he was placed in custody by an officer-without a warrant-who did not observe the criminal activity. Despite a detailed review of the record, we have been unable to locate any argument before the trial court that raised this claim. To preserve error for appellate review, the complaining party must make a timely, specific objection. *Armstrong v. State,* 718 S.W.2d 686, 699 (Tex.Crim.App. 1985). The complaining party must obtain an adverse ruling from the trial court. *DeRusse v. State,* 579 S.W.2d 224, 235 (Tex.Crim.App. [Panel Op.] 1979). Finally, the point of error on appeal must correspond to the objection made at trial. *Dixon v. State,* —— S.W.2d ——, ——, Nos. 021–98, 022–98, 1999 WL 714659, at *2 (Tex.Crim.App. Sept. 15, 1999); *Thomas v. State,* 723 S.W.2d 696, 700 (Tex.Crim.App. 1986). In this case, the trial court never had the opportunity to rule upon the issue now raised on appeal. This contention of error has not been preserved for appellate review.

Taylor next contends that the trial court improperly allowed the State to introduce evidence at the guilt/innocence phase of the trial about the characteristics of drug traffickers. This evidence was introduced by the State in the form of expert testimony concerning various items, in addition to the controlled substances, found inside Taylor's luggage. The complained-of testimony describes documents introduced into evidence as apparent balance sheets for drug sales. Other testimony explained why drug dealers would want a list of radio frequencies for local law enforcement agencies, and the purpose of baggies, cal-culators, scales, and cutting agents when used in the course of drug transactions.

■ Taylor contends that none of this evidence is relevant and that the court erred by admitting it over his objection. Tex.R. Evid. 402 provides that relevant evidence is admissible unless excluded by law. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R. Evid. 401. We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996); *Montgomery v. State,* 810 S.W.2d 372, 379–80 (Tex.Crim.App.1990). We will not reverse a trial court whose ruling was within the "zone of reasonable disagreement." *Green,* 934 S.W.2d at 102; *Montgomery,* 810 S.W.2d at 391 (opinion on reh'g).

■ In this case, the information provided by the expert explained to the jury a potential use of devices for unlawful purposes and described the account-keeping system often used by drug dealers. Such evidence is clearly relevant, in that it would permit the jury to make a more informed decision. Thus, it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. We cannot conclude under these facts that the trial court erred by finding the evidence to be relevant. This contention of error is overruled.

■ Taylor finally contends that the trial court erred by informing the jury, in response to its question, that the sentences in the two cases would run concurrently.[4]

---

3. None of the items so obtained is such as to show the existence of a crime. They include a magnetic key holder, a small envelope, a ledger from the Mercedes Corporation, Blu-Dri drying agent, a "bionic ear," a scanner, an electric knife, and a travel iron.

4. Taylor's other case on appeal, No. 06–98–00073–CR, 1999 WL 386950 is also being decided this day.

Taylor objected to the answer because it informed the jury of the result of its assessment of punishment. The court noted that Tex. Pen.Code Ann. § 3.03 (Vernon Supp.1999) specifically states that when an accused is found guilty of more than one offense arising out of the same criminal episode, prosecuted in a single action, the sentences shall run concurrently. The Texas Court of Criminal Appeals has held that a court does not abuse its discretion by submitting an instruction informing the jury that sentences will run concurrently in a case such as Taylor's and that such information is "a proper matter for jury consideration." *Haliburton v. State,* 578 S.W.2d 726, 729 (Tex.Crim.App. [Panel Op.] 1979); *accord Gordon v. State,* 633 S.W.2d 872, 879 (Tex.Crim.App. [Panel Op.] 1982); *Dickson v. State,* 986 S.W.2d 799, 804 (Tex.App.-Waco 1999, no pet. h.).

Taylor complains on appeal that this is not necessarily a correct statement of the law in this particular case, because the cases were not properly consolidated into a single criminal action by a motion by the State, as required by Tex. Pen.Code Ann. § 3.02 (Vernon 1994). The Texas Court of Criminal Appeals has held that a defendant is prosecuted in "a single criminal action" whenever allegations and evidence of more than one offense arising out of the same criminal episode, as that term is defined in Chapter 3, are presented in a single trial or plea proceeding, whether pursuant to one charging instrument or several. In the absence of some form of waiver, if the facts show the proceeding is a single criminal action based on charges arising out of the same criminal episode, the trial court may not order consecutive sentences. *LaPorte v. State,* 840 S.W.2d 412, 415 (Tex.Crim.App.1992). The trial court's statement of the law was correct. Error has not been shown.

The judgment is affirmed.