In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00102-CV


______________________________





IN RE:


LIVING CENTERS OF TEXAS, INC., AND MARINER 


POST-ACUTE NETWORK, INC., N/K/A, MARINER HEALTH CARE, INC.








 


Original Mandamus Proceeding







 
 



Before Morriss, C.J., Carter and Moseley, JJ.

Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 On August 22, 2007, relators Living Centers of Texas, Inc., and Mariner Post-Acute
Network, Inc., n/k/a, Mariner Health Care, Inc., filed a petition for writ of mandamus with this Court
seeking temporary emergency relief regarding orders signed by the Fourth Judicial District Court in
a medical malpractice lawsuit. The mandamus proceedings have since been stayed by agreement
of the relators and the real parties in interest. On November 14, 2007, the relators filed a motion to
dismiss their petition for writ of mandamus; the parties have apparently entered into a settlement
agreement regarding the underlying medical malpractice litigation.

 We grant the relators' motion to dismiss their petition for writ of mandamus.




 Josh R. Morriss, III

 Chief Justice



Date Submitted: November 15, 2007

Date Decided: November 16, 2007




                                  



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Steven L. Richey was charged by indictment with possession of a controlled
substance, in an amount greater than four grams but less than 200 grams, with intent to
deliver. Before trial, Richey moved to suppress the evidence seized during the search of
Ronnie Sloan's residence, claiming the warrant was not based on probable cause. The
trial court denied this motion. Richey then stipulated to the evidence, pled guilty, and was
sentenced to serve thirty years in prison. He now appeals the trial court's adverse ruling
on the motion to suppress. We affirm the judgment. 
Factual History
          On October 16, 2001, a search warrant was issued for Sloan's residence, located
at 3109 Steele Road, Kilgore, Gregg County, Texas. The affidavit was based on sworn
statements of Floyd Wingo, a veteran task force officer, and Celeste Peoples, Sloan's
girlfriend, who was named in the affidavit. The affidavit names Sloan and Richey as being
present at the residence. The search based on this warrant yielded more than fifty grams
of methamphetamine, various items for the manufacture of methamphetamine, and
currency in the amount of $634.00. 
          At the conclusion of the hearing on Richey's motion to suppress, the trial court
expressly concluded Richey did not have standing to challenge the validity of the warrant
for the search of Sloan's house. Richey challenges the adequacy of the search warrant
affidavit to establish probable cause. Specifically, he contends that the allegations of the
informant's reliability and credibility are insufficient.
Standard of Review
          An appellate court analyzing the denial of a motion to suppress should afford almost
total deference to the trial court's determination of the historical facts supported by the
record. See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Green v. State,
971 S.W.2d 639, 642 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). The same amount
of deference should be afforded the trial court's rulings on application of law to fact
questions, referred to as mixed questions of law and fact, if the resolution of those ultimate
questions turns on an evaluation of credibility and demeanor. See Guzman, 955 S.W.2d
at 89. However, mixed questions of law and fact may be reviewed de novo where the
resolution of those ultimate questions is not restricted to an evaluation of credibility and
demeanor. See id. Therefore, we will review de novo the trial court's determination of
standing. See Villarreal v. State, 935 S.W.2d 134, 138-39 (Tex. Crim. App. 1996).
Standing to Challenge Search Warrant 
          An accused may challenge the admission of evidence obtained by illegal
government intrusion only if he or she had a legitimate expectation of privacy in the place
invaded. See Rakas v. Ill., 439 U.S. 128, 143 (1978); Villarreal, 935 S.W.2d at 138. It is
the burden of the accused to prove facts establishing a legitimate expectation of privacy. 
See Villarreal, 935 S.W.2d at 138.
          To carry the burden of proof, an accused must normally prove that, by his or her
conduct, he or she exhibited an intention to preserve something as private, and that
circumstances existed under which society is prepared to recognize his or her subjective
expectation as being objectively reasonable. Id.; Taylor v. State, 995 S.W.2d 279, 281
(Tex. App.—Texarkana 1999), pet. dism'd, improvidently granted, 55 S.W.3d 584 (Tex.
Crim. App. 2001), cert. denied, 534 U.S. 1154 (2002). Factors relevant to this
determination include the following:
(1) whether the accused had a property or possessory interest in the place
invaded; (2) whether he was legitimately in the place invaded; (3) whether he
had complete dominion or control and the right to exclude others; (4)
whether, before the intrusion, he took normal precautions customarily taken
by those seeking privacy; (5) whether he put the place to some private use;
and (6) whether his claim of privacy is consistent with historical notions of
privacy.

Green, 971 S.W.2d at 642. 
          Courts have traditionally permitted overnight guests to assert a legitimate
expectation of privacy in the homes of their hosts. See Minn. v. Olson, 495 U.S. 91, 97–98
(1990). In Olson, the facts that the accused had stayed several days at the house and had
a change of clothes were factors in determining he was an overnight guest with an
expectation of privacy while within the home. Id. at 98 n.6. That is not to say, however,
that anyone who is a visitor in the nighttime hours enjoys this expectation of privacy. See
Taylor, 995 S.W.2d at 282. In Taylor, the accused arrived at his friend's house at night,
showered, and visited. Id. The record did not suggest Taylor slept at the house or
"otherwise behaved as an 'overnight guest.'" Id. Taylor, therefore, could not assert Fourth
Amendment protection to challenge the validity of the search of the house. Id. 
          Richey contends he proved facts to support his assertion of standing. First, he
argues that his statement the residence was a private home demonstrates he had a
legitimate expectation of privacy in Sloan's house. Further, he argues he had arrived at
the house at night and had been there for somewhere between eight and twelve hours
when he opened the door for the officers. 
          Assuming Richey did, as he stated, have a subjective expectation of privacy, he
does not satisfy the test employed to establish that his expectation is one which society is
prepared to recognize as reasonable. See Villarreal, 935 S.W.2d at 138. Richey had no
property or possessory interest in Sloan's residence. Richey testified, in fact, that he lived
elsewhere, not at 3109 Steele Road. The record fails to demonstrate Richey had any right
to exclude others, although the fact he answered the door when the officers knocked may
serve as an indication he exercised some control within the residence. We find no
evidence Richey had taken any precautions for his privacy while at Sloan's house.
          Richey did not prove facts essential to establish he was an overnight guest who is
afforded an expectation of privacy under Olson. There is no evidence Richey had slept,
bathed, or eaten at the house. The record also fails to indicate he had any personal
effects at the home. Similar to the appellant in Taylor, Richey appears to have been a
visitor at night, but that does not necessarily lead us to the conclusion he was an overnight
guest as contemplated by the Olson rationale and analysis. 
          Based on the record of the hearing on Richey's motion to suppress the evidence
obtained in the execution of the search warrant for Sloan's residence, we conclude Richey
did not have a legitimate expectation of privacy in that residence and, therefore, lacked
standing to challenge the legality of the search based on the warrant.
Sufficiency of the Affidavit
          Even if Richey had a legitimate expectation of privacy which would permit him to
challenge the warrant, his challenge would still fail. In the warrant, the informant is named,
a fact which distinguishes this warrant from those in the cases on which Richey relies. 
          A search warrant may be issued only if it is supported by a sworn affidavit setting
forth facts sufficient to establish that the property or item to be searched for or seized is
located at or on the particular person, place, or thing to be searched. Tex. Code Crim.
Proc. Ann. art. 18.01(c) (Vernon Supp. 2004). The issuing magistrate is called on to make
a practical, common-sense determination whether, given the totality of the circumstances
set forth in the affidavit, there is a fair probability contraband or evidence of a crime will be
found at the place described. Ill. v. Gates, 462 U.S. 213, 238 (1983); Hennessy v. State,
660 S.W.2d 87, 89 (Tex. Crim. App. [Panel Op.] 1983). A court reviewing this
determination must decide whether, from the information contained within the four corners
of the affidavit, substantial evidence in the record supports the magistrate's decision to
issue the warrant. Mass. v. Upton, 466 U.S. 727, 728 (1984). The reviewing court should
afford great deference to the magistrate's determination. Ramos v. State, 934 S.W.2d 358,
363 (Tex. Crim. App. 1996). Similarly, we review the trial court's decision to overrule a
motion to suppress evidence challenging the sufficiency of the warrant for an abuse of
discretion. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).
          When an affidavit contains information from a named informant, the affidavit will be
sufficient if the information given is sufficiently detailed so as to suggest direct knowledge
on the informant's part. Matamoros v. State, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995);
Wilkerson v. State, 726 S.W.2d 542, 545 (Tex. Crim. App. 1986); Mejia v. State, 761
S.W.2d 35, 38 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). There are, however,
varying degrees of credibility with respect to informants. For instance, where a named
informant is a private citizen, whose only contact with the police is a result of having
witnessed a criminal act committed by another, the credibility and reliability of the
information are inherent. Esco v. State, 668 S.W.2d 358, 360–61 (Tex. Crim. App. [Panel
Op.] 1982). Information supplied by an average citizen is "much less likely to produce false
or untrustworthy information" than information supplied by a suspect under arrest. State
v. Wester, 109 S.W.3d 824, 826–27 (Tex. App.—Dallas 2003, no pet.). 
          Both Peoples' status as a named informant and the nature of her statements
indicate Peoples is sufficiently credible and reliable. The fact Peoples allowed her name
to be used in the affidavit "goes a long way toward establishing her credibility." See Woods
v. State, 533 S.W.2d 16, 19 (Tex. Crim. App. 1976); Wester, 109 S.W.3d at 826–27. 
Peoples did not supply the information as a result of police investigation of her. Rather,
the record indicates she initiated the contact with police. 
          As further support of her reliability, the affidavit also states she had been living in
the house and was familiar with the appearance of methamphetamine. Additionally, or
alternatively, this statement could be treated as a statement against her penal interest in
that she appeared to implicate herself by stating she had been living at the residence and
was familiar with the manufacturing process. See United States v. Harris, 403 U.S. 573,
583 (1971); Hennessy, 660 S.W.2d at 91; Hackleman v. State, 919 S.W.2d 440, 447 (Tex.
App.—Austin 1996, pet. ref'd, untimely filed). 
          Giving proper deference to the magistrate's determination, and viewing the totality
of the circumstances in a light most favorable to the trial court's ruling, we conclude the trial
court did not abuse its discretion in overruling Richey's motion to suppress.
          We affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      December 16, 2003
Date Decided:         December 17, 2003

Do Not Publish