COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

THE STATE OF TEXAS,                                    No. 08-10-00119-CR

§

            Appellant,                              Appeal from the

§

v.                                                     County Criminal Court No. 6

§

LAKENDRICK MARKESSE ROGERS,                            of Tarrant County, Texas

§

            Appellee.                               (TC# 1185570)

§

## O P I N I O N

The State of Texas appeals from an order granting a motion to suppress in favor of Lakendrick Rogers.

## FACTUAL SUMMARY

Ronnie McCoy, an Arlington police officer, responded to a burglary dispatch one afternoon at the apartment of Joyce Davison and her sons, Bryant and Glen, who are mentally-challenged.[1]  Bryant's cell phone had been taken the day before and Appellee's brother, Xavier, called Bryant and told him that Appellee had the phone.  Xavier told Bryant that they were going to pick him up and take him to Appellee to retrieve the phone.  Xavier and Jarvis Abbott arrived at Bryant's apartment and told him they were going to meet Appellee at the Albertson's store down the street.  Bryant then left with them.  At the same time, Glen left the apartment unlocked while he went to pick up the mail.  Xavier and Jarvis drove around while they waited for Appellee.  After a while, Xavier said that Appellee could not meet them after all

---

[1]  McCoy testified that Bryant and Glen were "20 something" years of age.  The record does not reflect the ages of Appellee, his brother Xavier, or of Jarvis Abbott.

because he had to take the car home to their mother and they drove Bryant back to his apartment. When he went in the apartment, Bryant discovered that a laptop computer, a Wii game console, an XBox game console, and the controllers had been taken. Bryant and Glen told McCoy that Xavier and Appellee were staying with Jarvis.

A few hours later, McCoy obtained an address for Jarvis and he went to that residence at 10:00 p.m. that same night. McCoy rang the doorbell and he saw someone look through the blinds but no one answered the door. Undeterred, McCoy knocked on the door for seven to ten minutes until Jarvis opened the door. Jarvis invited the officers in because it was cold. Jarvis stated that he was at home alone, but after a few minutes of conversation, Jarvis' brother walked into the living room. McCoy asked if anyone else was there and Jarvis' brother stated that both Appellee and Xavier were there. After McCoy got both Appellee and Xavier to come into the living room, he and Jarvis walked into a bedroom to talk privately about the burglary report. As they talked, McCoy heard a "commotion" under the bed and discovered that Jarvis' sister was hiding under the bed. The sister told McCoy that she had just spoken to their mother, LaSondra Degrate, and she was on her way home. While they waited for her, Jarvis told McCoy that he already knew why the officers were there because Bryant had been sending text messages stating that Appellee had broken into his apartment. Degrate arrived in a few minutes and McCoy told her they were investigating a residential burglary and that Jarvis was one of the suspects. Degrate became upset with Jarvis and she gave McCoy consent to search her home.

McCoy and Jarvis walked into his bedroom to begin the search. Jarvis told McCoy that any stolen property would probably be in Appellee's backpack. As he conducted the search, McCoy looked under the bed and saw a number of items. He asked Jarvis what was under the bed. Jarvis began pulling items from beneath the bed and he handed the officer a backpack,

2

stating that it was Appellee's backpack. McCoy was unsure whether to believe Jarvis because he had lied to the officer earlier. McCoy opened the backpack and found the items taken in the burglary. After being given his Miranda warnings, Appellee admitted that it was his backpack but he denied knowing how the stolen property came to be placed in the backpack.

Appellee filed a motion to suppress the evidence on the grounds that the consent was invalid. The trial court granted the motion.

## STANDING

The State raises eleven points of error in its challenge of the trial court's ruling on the motion to suppress. In Points of Error Three and Four, the State asserts that Appellee lacks standing to contest the search. Additionally, in Point of Error Nine, the State challenges the trial court's legal conclusion that Jarvis Abbott did not have joint control or joint use of Appellee's backpack.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S.CONST. Amend. IV. Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy in the property searched. *Oliver v. United States*, 466 U.S. 170, 177, 104 S.Ct. 1735, 1740-41, 80 L.Ed.2d 214, 223 (1984); *Kothe v. State*, 152 S.W.3d 54, 59 (Tex.Crim.App. 2004), *citing Rakas v. Illinois*, 439 U.S. 128, 139, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978). The Fourth Amendment does not protect the merely subjective expectation of privacy, but only those expectations that society is prepared to recognize as reasonable. *Oliver*, 466 U.S. at 177. To carry his burden, an accused must prove that: (1) by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (b) circumstances existed

3

under which society was prepared to recognize his subjective expectation as objectively reasonable. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996), *citing Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). The following factors are relevant to a court's determination of whether the accused's subjective expectation was one that society was prepared to recognize as objectively reasonable: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Villarreal*, 935 S.W.2d at 138. This list of factors is not exhaustive, however, and none is dispositive of a particular assertion of privacy; rather, we examine the circumstances surrounding the search in their totality. *Id.* Although we defer to the trial court's factual findings, we review the legal issue of standing *de novo*. *Kothe*, 152 S.W.3d at 59.

The State contends that Appellee does not have standing to complain about the search of the house because the evidence failed to show he was anything other than a casual visitor and Degrate's unlimited consent to search permitted the search of the backpack. An overnight guest in someone's home has a legitimate expectation of privacy. *Minnesota v. Olson*, 495 U.S. 91, 98, 110 S.Ct. 1684, 1689, 109 L.Ed.2d 85 (1990); *Luna v. State*, 268 S.W.3d 594, 603 (Tex.Crim.App. 2008). That expectation of privacy is controlled to a significant degree by the wishes of the host and a host may diminish the guest's expectation of privacy by permitting the police to search the premises. *Granados v. State*, 85 S.W.3d 217, 222-25 (Tex.Crim.App. 2002). While an overnight guest has a reasonable expectation of privacy, one who is merely present on the premises

4

with the consent of the owner does not. *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S.Ct. 469, 473, 142 L.Ed.2d 373 (1998); *see Calloway v. State*, 743 S.W.2d 645, 650 (Tex.Crim.App. 1988)(guest who had no possessory or proprietary interest in premises, and no clothes or other belongings in the house, was a mere guest and did not have a reasonable expectation of privacy). The evidence showed that Appellee was present at night but that is insufficient to prove that he was an overnight guest. *See Taylor v. State*, 995 S.W.2d 279, 282 (Tex.App.--Texarkana 1999)(holding that the defendant was not overnight guest even though he was present at night), *pet. dism'd as improvidently granted*, 55 S.W.3d 584 (Tex.Crim.App. 2001). Consequently, he failed to establish that he has standing to contest the search of the premises.

Appellee readily concedes that he does not have standing with respect to the consensual search of the home, but he argues that he does have a reasonable expectation of privacy in his backpack. The State argues that since Degrate provided the police with an unlimited consent to search the premises, Appellee does not have standing to contest the search of his backpack. The distinction drawn by Appellee is valid. The Fourth Amendment protects people, not places. *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Whether Degrate's consent to search extended to the backpack goes to the merits of the search issue and must be considered apart from the issue of standing. In determining standing, our focus must be on whether Appellee had a reasonable expectation of privacy in the place or thing searched, which in this case is the backpack. *See Stockvis v. State*, 147 S.W.3d 669, 671 (Tex.App.--Amarillo 2004, pet. ref'd)(defendant did not have standing to contest search of vehicle in which she was a passenger but she did have reasonable expectation of privacy in her purse); *Stone v. State*, 147 S.W.3d 657, 659-60 (Tex.App.--Amarillo 2004, pet. ref'd)(defendant, as a passenger, did not have reasonable expectation of privacy in the vehicle, but she had a reasonable expectation of privacy in

5

her purse).

It was undisputed at the suppression hearing that Appellee claimed the backpack as his property when Officer McCoy asked him if it was his. McCoy testified that both Jarvis and his sister, DaShonda, told him that Appellee regularly carried the backpack and always had it with him. While the evidence showed that Jarvis knew the backpack was hidden under his bed and contained stolen property, and Jarvis retrieved the backpack from beneath the bed at the officer's request, there is no evidence that Jarvis claimed ownership in the backpack or ever used it. To the contrary, Jarvis made sure the officer knew that it was Appellee's backpack. A backpack, like a purse, is intended as a repository of personal effects. *See Stockvis*, 147 S.W.3d at 671 (purse); *Wilson v. State*, 99 S.W.3d 767, 770 (Tex.App.--Houston [14th Dist.] 2003, pet. ref'd)(purse and backpack). Consequently, a general expectation of privacy in this type of container is reasonable. *Wilson*, 99 S.W.3d at 770. Under these facts, we find that Appellee had a reasonable expectation of privacy in his backpack. Points of Error Three, Four, and Nine are overruled.

## SEARCH OF THE BACKPACK

In Points of Error One, Two, Five, Six, Seven, and Eight, the State challenges the merits of the trial court's order granting the motion to suppress. The State maintains that Degrate's unlimited consent authorized the search of all containers in the home, including the backpack, and the trial court erred by considering whether Degrate had actual authority or apparent authority to consent to a search of the backpack.[2]

---

[2] Most of the State's issues are based on Fourth Amendment principles, but the second and eleventh points of error are based on Article I, Section 9 of the Texas Constitution. State and federal constitutional claims should be argued in separate grounds, with separate substantive analysis or argument provided for each ground. *Muniz v. State*, 851 S.W.2d 238, 251-52 (Tex.Crim.App. 1993); *Heitman v. State*, 815 S.W.2d 681, 690-91 n. 23 (Tex.Crim.App. 1991). Although the state and federal constitutional claims have been raised in separate points of error, the State's brief does not include separate argument and authority addressing how the protection provided by Article I, Section 9 differs from the protection provided by the Fourth Amendment. *Muniz*, 851 S.W.2d at 251-52; *Heitman*, 815 S.W.2d

*Standard of Review*

We apply a bifurcated standard of review when considering the trial court's ruling on a motion to suppress. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex.Crim.App. 2010). At a suppression hearing, the trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex.Crim.App. 2007). As such, the trial judge may choose to accept or reject any or all of the testimony offered. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); *Peralta v. State*, --- S.W.3d ----, 2010 WL 4851388 (Tex.App.--El Paso 2010, no pet.). Accordingly, we will defer to the trial court's express or implied determination of historical facts. *Hubert*, 312 S.W.3d at 559. The issue whether a third party had actual authority to consent to a search of another's property and whether a law enforcement officer was reasonable in finding that a third party had apparent authority to consent are mixed questions of law and fact which are reviewed *de novo*. *Id.*

*Consent Exception to Warrant Requirement*

Under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant is *per se* unreasonable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Id*. at 219; *Hubert*, 312 S.W.3d at 560. Whether it is reasonable under the Fourth Amendment for an officer to rely on consent is a question which we determine by examining the totality of the circumstances.

---

at 690-91 n.23. Because the State has inadequately briefed the points of error related to Article I, Section 9, nothing is presented for our review. *See Muniz*, 851 S.W.2d at 251-52; TEX.R.APP.P. 38.1(i). Our analysis is therefore restricted to the Fourth Amendment.

7

*Hubert*, 312 S.W.3d at 560; *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002).

Even when an individual voluntarily consents to a search, an officer's authority to perform the search is not without limit. *DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Crim.App. 1996), *overruled on other grounds by Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997); *May v. State*, 582 S.W.2d 848, 851 (Tex.Crim.App. [Panel Op.] 1979). The extent of the search is limited to the scope of the consent given, and the scope of the consent is generally defined by its expressed object. *DuBose*, 915 S.W.2d at 496; *see Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297, 303 (1991). The standard for measuring the scope of consent is that of "objective" reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the individual? *Valtierra v. State*, 310 S.W.3d 442, 448-49 (Tex.Crim.App. 2010), *citing Jimeno*, 500 U.S. at 251, 111 S.Ct. at 1803-04. Consent to search a space generally includes consent to search containers within that space. *See Jimeno*, 500 U.S. at 251, 111 S.Ct. at 1804. The State has the burden of showing that the search was conducted within the scope of the consent received. *See Malone v. State*, 163 S.W.3d 785, 798 n.6 (Tex.App.--Texarkana 2005, pet. ref'd).

In this case, Officer McCoy informed Degrate that he was searching for a laptop computer, an Xbox game console and a Wii game console. Those are items which could be stored inside various containers, including a backpack. Thus, her consent certainly included any containers, such as a backpack, where those items might be found. The State contends that this is the end of the inquiry and there should be no further consideration of whether Degrate had actual authority or apparent authority to consent to a search of Appellee's backpack. We disagree because the scope of consent is distinct from actual authority and apparent authority to consent. These issues were squarely placed before the trial court by Appellee's motion to suppress and the evidence presented

8

at the suppression hearing.

<em>Actual Authority and Apparent Authority</em>

A third party can consent to a search to the detriment of another's privacy interest if the third party has actual authority over the place or thing to be searched. *Hubert*, 312 S.W.3d at 560. The third party may, in his own right, give valid consent when he and the absent, non-consenting person share common authority over the premises or property. *Id.*, *citing United States v. Matlock*, 415 U.S. 164, 169-70, 94 S.Ct. 988, 992-93, 39 LEd.2d 242 (1974). Although property interests are relevant to this determination, the commonality of authority to consent is not determined solely by the law of property. *Id.*, *citing United States v. Matlock*, 415 U.S. at 171 n.7. Instead, common authority is shown by mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. *Id.*, *citing United States v. Matlock*, 415 U.S. at 171 n.7. A defendant who has thus assumed the risk that another may permit a search of their shared property or premises may not complain of that search under the Fourth Amendment. *Hubert*, 312 S.W.3d at 560. The reviewing court determines actual authority to consent using an objective standard: would the facts available to the officer at the moment of the search warrant a man of reasonable caution in the belief that the consenting party had authority over the premises and its contents. *Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. *Id.* at 188-89.

Even if the third party lacks actual authority, the search may be valid under the apparent authority doctrine. When an officer reasonably, though erroneously, believes that a third party

9

purporting to provide consent has actual authority over the place or thing to be searched, apparent authority exists and the purported consent from the third party can serve to make the search reasonable. *Hubert*, 312 S.W.3d at 561. Under the apparent authority doctrine, an officer conducting a consent search must make reasonable inquiries when "ambiguous circumstances" arise. *McNairy v. State*, 835 S.W.2d 101, 105 (Tex.Crim.App. 1991). Thus, when confronted with a situation that does not reasonably appear to be included within the consent obtained, the searching officer must stop and make inquiries as to the continued effectiveness of the consent. *Id.*

The burden is on the State to show that the person who consented to the search had actual or apparent authority. *Hubert*, 312 S.W.3d at 561. To meet its burden, the State must provide evidence that a third party either had mutual access to and control over the place that was searched, or that the officers conducting the search reasonably believed facts provided to them by a third party that would have been legally sufficient to justify a search as reasonable. *Id.* at 561-62. Under the Fourth Amendment, the State must show by a preponderance of the evidence that it was reasonable for the officers to proceed on the information they had. *Id.* at 562.

The evidence showed, and the trial court found, that Jarvis retrieved Appellee's backpack from beneath his bed and handed it to the officer, stating that it was the backpack which Appellee carried. The evidence also showed that McCoy, at that moment, did not necessarily believe Jarvis regarding ownership of the backpack because he had been untruthful with the officer throughout their encounter that evening. While Degrate had actual authority to consent to a search of the premises for the stolen property, Jarvis' statement would have raised a question in the mind of a reasonable person whether Degrate had actual authority to consent to a search of the backpack. At the very least, Jarvis' statements presented the officer with ambiguous circumstances which

10

obligated him to stop and make inquiries as to the continued effectiveness of Degrate's consent with respect to the backpack.

We conclude that the State failed to prove that Degrate had either actual or apparent authority to consent to the search of Appellee's backpack.  *See May*, 582 S.W.2d at 852 (consent of the passenger to search the vehicle which belonged to his parents did not extend to a lunch box which the officer knew belonged to the defendant).  Because the State failed to establish a valid exception to the warrant requirement, the trial court did not err by granting the motion to suppress. We overrule Points of Error One, Two, Five, Six, Seven, and Eight.  Given our disposition of these issues, it is unnecessary to address Points of Error Ten and Eleven.  We affirm the judgment of the trial court.


GUADALUPE RIVERA, Justice

April 11, 2012

Before McClure, C.J., Rivera, J., and Antcliff, J.

(Do Not Publish)

11