**Johnny Leon MAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60532.**

Court of Criminal Appeals of Texas, Panel No. 3.

June 27, 1979.

William A. Dyess, Brownfield, for appellant.

E. W. Boedeker, Dist. Atty. and Warren J. New, Asst. Dist. Atty., Levelland, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This is an appeal taken from an order revoking probation and assessing punishment by confinement for a term of five years in the Texas Department of Corrections. Regularity of original and revocation proceedings and sufficiency of the evidence are not questioned. Suffice it to say that on November 10, 1977 appellant entered a plea of guilty to the charge of theft of money over $200.00 and less than $10,000.00, was assessed punishment at confinement for a term of five years but imposition of sentence was suspended and appellant placed on probation under the usual conditions, one of which was that he commit no offense against the laws of the State of Texas or of any other state or of the United States. April 27, 1978 a motion to revoke probation was filed alleging a violation of that condition of probation in that on or about April 16, 1978 appellant knowingly possessed a useable quantity of marihuana. Hearing on the motion was season-

ably held with the consequential sentence to confinement for a term of five years. Appellant's sole ground of error is that the trial court erred in admitting into evidence over objection of appellant fruits of a warrantless search of his lunch box in that the search was conducted without consent and without probable cause to conduct it.

Shortly before midnight in Brownfield, Terry County, a deputy sheriff stopped a Volkswagen van matching a description of a motor vehicle communicated to him by radio transmission that was suspected of having been involved in a burglary of another motor vehicle.[1] Appellant was driving the van; it belonged to the parents of a juvenile who was then a passenger in the van. Stopping it, the deputy sheriff had both appellant and the juvenile,[2] the only occupants of the van, get out of it and await arrival of officers of the Brownfield Police Department. One of them, a patrol sergeant who was apparently in charge of the investigation, obtained from the deputy sheriff appellant's driver's license, and, in the word of the deputy, took "custody" of appellant and the juvenile. The sergeant then arranged for the juvenile to ride in the police vehicle with him and another officer and for appellant, driving alone in the van, to follow them to the Henson residence.[3] Arriving at the Henson premises, the sergeant asked the juvenile for permission to search the van for stolen tools and the juvenile assented.[4] The conversation with

1. Reliability of the initial information and credibility of its originator were not examined during the course of the revocation hearing, for the search at issue was based on consent. The alarm was sounded by housewife Henson, reporting that someone was stealing tools from the back of the Henson pickup truck and her husband had left their place in pursuit of a van that she described. As it turned out, however, the VW van being driven by appellant did not contain tools stolen from the Henson pickup for the simple reason that an examination of the pickup by Mr. Henson revealed none were missing—her hue and cry had been sounded mistakenly.

2. Aside from one officer stating his name, the record reveals very little biographical data concerning the juvenile other than being a male.

3. We observe, with pardonable curiosity, that having apprehended persons suspected of burglary of tools reported to be in the van, the officers neither frisked or searched the van nor patted down, frisked, or searched the person of appellant or the juvenile at the scene of their apprehension.

4. For the State, the sergeant testified concerning his knowledge of ownership and possession of the van as follows:

   "Q: I see. Well, at that time did you know that Mr. Johnny Leon May was not the owner of that van?

   A: I didn't know if he was not the owner of it then. I knew from the past that this juvenile was in possession of it or had control of it all of the time."

the juvenile was in the presence of and was overheard by an officer who later searched the van. He testified that after driving the van to the Henson premises, appellant remained in his position in the driver's seat some distance away from the site of the discussion. Neither the searching officer nor anyone else undertook to claim that appellant actually heard the juvenile grant permission to search the van. Moreover, the sergeant who obtained assent from the juvenile did not ask appellant for permission to search nor, so far as he was aware, did any other officer. The searching officer did not seek consent from appellant.

In making his search of the interior of the van, the officer testified he was looking for tools that "might possibly have been stolen from Mr. Henson *or others.*" He knew that the "stuff" belonging to Henson was marked with his name, and that about a month earlier another pickup had been burglarized of tools that were also "all marked." But as to the particular kind or type of tools belonging to Henson is obvious from his testimony that the searching officer had not been provided with a descrip-tion of them.[5] The searching officer began his examination of the van at its rear and worked forward. In the back was a bed with a compartment under it in which he observed several things, apparently including some hand tools, but nothing that was identifiable; that is, the tools and things were not marked—again, the officer was looking for marked tools. Completing his examination of the entire area behind him without finding any tool that was marked, as he made his way toward the driver's seat with appellant sitting in it, he observed a closed lunch box on the floor right behind that seat. He picked up the lunch box and as he opened it to look into it asked, "Who's lunch box is this?" Appellant said it was his.[6] Looking into the lunch box the officer saw a number of prescription type medicine bottles and upon examining them discerned that the labels bore the name of appellant, that some of the bottles contained medicine and two had what he believed to be marihuana in them. The officer further candidly admitted that he had no reason to believe that there was marihuana in the lunch box

---

Another officer who purported to know testified that the van was registered in the names of the mother and father of the juvenile but that he had had possession of it for some length of time.

Notwithstanding the fact that the officers had in their custody a suspected thief and the record does not indicate that before obtaining his consent to search any one of them ever advised the juvenile of his constitutional and statutory rights, the issue of proper waiver of Fourth Amendment rights by a juvenile according to V.T.C.A., Family Code § 51.09 was not raised in the trial court nor urged upon this Court. See *Lovell v. State*, 525 S.W.2d 511, 514–515 (Tex.Cr.App.1975) construing its provisions before they were modified by an addition of Subsection (b) and compare *B. L. C. v. State*, 543 S.W.2d 151, 153 (Tex.Civ.App.—Houston (14th Dist.) 1976) writ ref'd n. r. e., discussing the 1975 modification. See also *E___ A___ W___ v. State*, 547 S.W.2d 63 (Tex.Civ.App.—Waco 1977) and *D. B. v. State*, 556 S.W.2d 845, 849 (Tex.Civ.App.—Houston (14th Dist.) 1977). See, generally, Benson, "Search and Seizure in Texas Juvenile Justice," *Texas Juvenile Defense Manual, Revised Edition* (C.D.L.P., 1978) 19 at 22.

5. "Q: Okay. What particular tools, then, of Mr. Henson's were you looking for?
A: (no answer)
Q: If he thought he was missing tools and you were looking for those tools.
A: I *would say* hand tools because that is what he carries in the back of his pickup.
\* \* \* \* \* \*
Q: But you didn't have any idea what tools? He hadn't even checked to see whether or not he was missing tools?
A: Yes, sir.
Q: And you knew he hadn't checked to see if he was missing tools?
A: That, I couldn't say as to what—
Q: Well, he hadn't named you any tools he was missing?
A: No, sir."

6. On cross-examination the officer only "believed" he was looking in the lunch box when he made the inquiry and received the response, admitted that upon being told the lunch box belonged to appellant he did not obtain consent to search it and, with commendable candor, admitted he was told the lunch box belonged to appellant before he found the marihuana, the possession of which is the basis of the motion to revoke and the order revoking probation.

when he picked it up. Appellant was placed under arrest, removed from the van, his person was searched and he was handcuffed.

Meanwhile, Henson had checked his pickup, determined that nothing was missing and communicated that fact to the patrol sergeant. The sergeant walked to the van and relayed that information to the searching officer who, according to the sergeant, had already found the lunch box.

Contending that the juvenile whose parents owned the van could not give a valid consent to search the van when appellant was present and "in possession" of the van that he had been driving, appellant recognizes the contrary holding of this Court in *Swinney v. State*, 529 S.W.2d 70 (Tex.Cr. App.1975),[7] but makes a forceful presentation that *Swinney* was wrongly decided. We leave that issue for another day in order to address his second contention.

Appellant also challenges the search of his lunch box on the theory that in light of the circumstances attending the seizure and search of it consent by the juvenile to search the van may not be considered consent to search his lunch box. From authoritative decisions believed to be more than persuasive, we agree.

■ It must be remembered that the consent given by the juvenile was to a request to "search the vehicle for tools." It is axiomatic that the limit of the right of officers to search is only coextensive with the particular search consented to. 79 C.J.S. Searches and Seizures § 62, p. 818; *Honig v. U. S.*, 208 F.2d 916, 919 (8 Cir. 1953); *Davis v. California*, 341 F.2d 982, 985, n. 8 (9 Cir. 1965); *U. S. v. Dichiarinte*,

445 F.2d 126, 129, n. 3 (7 Cir. 1971); *Mason v. Pulliam*, 557 F.2d 426, 428–429 (5 Cir. 1977):

> "When the basis for a search or seizure is consent, the government must conform to the limitations placed upon the right granted to search, seize or retain the papers or effects."

That the lunch box was the property of appellant, as he claimed it was, was immediately accepted by the searching officer and clearly is undisputed.[8] Since the lunch box did not belong to the juvenile, seizing and searching it was not a violation of his right to or expectation of privacy with respect to it. There is absolutely no showing that the juvenile even knew the lunch box was in the van or, knowing that it was, that he possessed some authority in common with appellant over it. In the absence of a demonstration by the State that the juvenile had standing to resist the seizure and search of the lunch box as an invasion of his own Fourth Amendment rights, the juvenile was powerless to consent to the seizure and search of the property of another. In any event, factually it is clear that he did not do so.

■ But the State argues that once valid consent to search the van was given, the officer could search the entire vehicle and its contents, including the lunch box. In the circumstances of this case, however, given the limited consent to search the van for tools, we believe the State needed to show, as in *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) that the juvenile was "a joint user" of the lunch box in order to have authority to consent to a search that included it, 394 U.S. at 740, 89 S.Ct. at 1425. The *Frazier* principle has

---

**7.** In rejecting a similar contention made by Swinney with respect to a search of her automobile upon consent by his wife, the court pointed to and relied upon *Sorensen v. State*, 478 S.W.2d 532 (Tex.Cr.App.1972) as authority for upholding a search of his bedroom for marihuana consented to by his parents "when he was present." A close reading of *Sorensen* will reveal that he was, indeed, present when a search of the closet in his bedroom was made but the prior written consent to search was executed by the mother at the Killeen Police

Department and at sometime thereafter signed by the father. Be that as it may, we find it unnecessary to re-examine *Swinney*.

**8.** Indeed, his admission of ownership and its location immediately behind him constitutes the principal proof of the State on motion to revoke probation that he possessed its contents. The judgment revoking probation expressly finds that appellant did, on the occasion in question, knowingly possess a useable quantity of marihuana.

been recognized and applied by this Court in, e. g., *Lowery v. State*, 499 S.W.2d 160, 165–166 (Tex.Cr.App.1973). Thus we are constrained to hold that invasion of the privacy of appellant with respect to his lunch box could not be authorized by the juvenile, as a matter of law, and was not intended to be authorized by him, as a matter of fact.

Furthermore, the minute appellant told the searching officer that the lunch box was his, the officer knew or should have known that he had gone beyond permission to search granted by the juvenile. The fact that the officer made inquiry is indicative of wariness on his part that the consent was not unlimited. That he failed to heed the responsive assertion of right by the appellant led him into an abridgement of rights vouchsafed by the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution.

The nexus between consent of the juvenile to search the van for stolen tools and the seizure of the lunch box for that purpose was broken by the verbal exchange between the searching officer and appellant which revealed the lunch box belonged to him. At that precise point waiver of probable cause by the juvenile to search the van, *Bennett v. State*, 450 S.W.2d 652, 654 (Tex. Cr.App.1970), even if it initially embraced the lunch box, was rendered ineffective with respect to it. Appellant did not consent to the seizure or search of the lunch box. Thus the warrant requirement of our respective constitutions became operative. Clearly, the officers could not have truthfully articulated requisites for obtaining a search warrant for several reasons, the principal one being that since Henson did not know whether any tools were, in fact, missing there was no probable cause to believe that stolen tools belonging to him were in the lunch box—indeed, even in the van—and while "others" may have had tools stolen a month before, there is nothing in this record to support even a suspicion they might be in or about the van.[9] *Adams v. State*, 137 Tex.Cr.R. 43, 128 S.W.2d 41 (1939).

Concluding, as we must, that the warrantless search of the lunch box was not justified by consent of the juvenile to search the van nor based on probable cause to search the lunch box for tools, we then sustain appellant's ground of error and hold that admitting into evidence over objection the fruits of the warrantless search of the lunch box was reversible error.

The sentence is vacated, the order revoking probation is set aside and the cause remanded.

---

**9.** The searching officer was the first one to arrive at the Henson residence. Henson returned a minute or two after that; the sergeant and others in his vehicle, followed by appellant in the van, got there about five minutes later. Incredibly, there is not the slightest suggestion in the record before us of the factual basis for the report attributed to Mrs. Henson; we are left to wonder how it was that the Hensons were caused to think that tools were being stolen from the pickup. Also, we note that there is not the smallest hint that Henson was asked to or did identify the van occupied by appellant as the one he had pursued and lost. Further, during the four or five minutes while they were awaiting the arrival of the patrol sergeant and his party, the searching officer discussed with Henson tools that might be missing and learned that Henson did not know "what was missing"—another way of saying, we believe, he did not know whether anything was missing. These circumstances so debilitate the already weak initial report of Mrs. Henson as to render it too feeble to support probable cause for the ensuing search. Moreover, by the time the searching officer found himself empty-handed at the back of the driver's seat whatever notions of probable cause he had formed were surely fading rapidly and, in fact, the objects of his quest were safely in the back of the Henson pickup.