NO. 07-04-0031-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 19, 2004


______________________________



ELAINE STOKVIS, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;



NO. CR-03F-089; HON. ROLAND SAUL, PRESIDING


_______________________________



Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

 Appellant, Elaine Stokvis, appeals her conviction for possessing a controlled
substance. The sole issue before us concerns whether the trial court erred in failing to
grant her motion to suppress evidence. The evidence in question was methamphetamine
found in her purse (which resulted in her arrest) and drug paraphernalia found in her
luggage after her arrest. The initial search was conducted by two Department of Public
Safety officers pursuant to consent given by the male driving the pickup truck in which
appellant rode as a passenger. We sustain the issue and reverse the judgment.

 The pertinent facts are undisputed. Appellant, a female, rode as a passenger in a
truck driven by a man known as Shorty. They were stopped between 10 and 11 p.m. on
a public road after two DPS officers noticed the car weaving and traveling 35 mph in a 65
mph zone. No one questions the legitimacy of the stop. Nor does anyone question that
Shorty gave the officers permission to search the truck, that appellant was outside the truck
when the search began, that appellant's purse was on the passenger's seat, that the first
officer discovered nothing in the truck, that the second officer began his own search of the
vehicle, which search included the opening of appellant's purse and the discovery of
methamphetamine therein, and that appellant admitted (after the search) that the purse
and drugs were hers. That the purse was appellant's, that appellant was the only female
in the truck, and that no one asked her permission to search it is also clear. 

 Moreover, the only witness to testify at the suppression hearing (i.e. the officer who
searched the purse) did not know when appellant exited the truck (that is, whether she had
left it before Shorty consented to its search), whether anyone told her of the officer's intent
to search the vehicle, or whether they told her that Shorty had consented to a search of it. (1) 
And, when asked if "from the way you recall everything she probably didn't hear the
request for consent or the giving of consent by Mr. Esqueda," the officer replied: "[t]hat's
correct, sir." This response reconfirmed his earlier statements that he thought the consent
may have been solicited from Shorty outside the presence of appellant and "[i]t's very
possible" that appellant did not hear the officer ask for Shorty's consent.

 Standing

 To assess whether the trial court erred in refusing to suppress the evidence, we
must first determine whether appellant had standing to contest the search. The State
posits that she did not. We disagree.

 Standing may be raised at any time. State v. Klima, 934 S.W.2d 109, 110-11 (Tex.
Crim. App. 1996). Furthermore, whether it exists is a question of law. Pennywell v. State,
84 S.W.3d 841, 844 (Tex. App.-Houston [1st Dist.] 2002), remanded on other grounds, 125
S.W.3d 472 (Tex. Crim. App. 2003). Finally, to have standing requires the defendant to
show not only that he had an expectation of privacy in the property searched but also that
the expectation is one that society is prepared to recognize as reasonable. Jackson v.
State, 745 S.W.2d 4, 7-8 (Tex. Crim. App.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916,
101 L. Ed.2d 947 (1988); Pennywell v. State, 84 S.W.3d at 844.

 Next, before we can accurately assess whether the two elements were satisfied
here, it is imperative to determine the scope of appellant's attack. She does not question
the search of the truck but rather that of her purse. Moreover, she admitted that the purse
was hers, and nothing of record suggests, in any way, that her male companion claimed
it as his or that the officers believed it belonged to anyone other than appellant. Indeed,
she was the only female in the truck. And, because a purse is intended as a general
repository of personal effects, appellant had a legitimate expectation of privacy in it and its
contents. See Wilson v. State, 99 S.W.3d 767, 770 (Tex. App.-14th Dist.] 2003, pet. ref'd);
see also Coronado v. State, 835 S.W.2d 636, 640 (Tex. Crim. App. 1992) (holding that
students have a high expectation of privacy in their purses, wallets, letters, and diaries);
Dawson v. State, 868 S.W.2d 363, 370 (Tex. App.-Dallas 1993, pet. ref'd) (holding that
a purse is an item in which most women carry personal items and cash and the fact that
the defendant stored her purse in her locker and placed a lock on the locker is evidence
she intended to exclude others from the locker). 

 Additionally, that the owner left her purse in a vehicle owned by a third party does
not ipso facto negate the existence of her privacy interest in it. See May v. State, 582
S.W.2d 848, 852 (Tex. Crim. App. 1979) (holding that consent of the passenger to search
the vehicle which belonged to his parents did not extend to a lunch box which the officer
knew belonged to the defendant). This is especially so when the record is bereft of
evidence illustrating that the defendant intended to abandon or otherwise relinquish her
interest in the property. Such is the case here.

 Again, the record indisputably reveals that the purse was located on the passenger
seat whereat appellant sat before the stop, that she never journeyed from the vicinity of the
truck (and, therefore, her purse) once she stepped from it, that she claimed the purse as
hers, and that she never gave her consent to its search. Moreover, nothing of record
suggests, much less illustrates, that appellant knew what, if anything, the officers were
doing when entering the truck or that Shorty had given them permission to search the
vehicle. And, without proof that she left her purse in the vehicle while having the
aforementioned knowledge, one cannot reasonably infer that the act of leaving the purse
in the vehicle evinced some indicia of intent to relinquish her expectation of privacy in it. 
Nor is this court prepared to say that a female must either carry her purse on her person
at all times or place it under lock and key as a condition of retaining her privacy interest.

 In short, we conclude, as a matter of law, not only that appellant had a legitimate
expectation of privacy in her purse but also that society (and the law) actually has deemed
that interest reasonable. So, appellant had standing to contest the search of her purse.

 Legitimacy of Search

 Next, we address the legitimacy of the search. Again, it was based upon consent, 
and no one argues otherwise. Furthermore, the record indisputably illustrates that the
officers asked Shorty for consent to search the vehicle; never was appellant asked for
permission to search her purse. Similarly unquestionable is that appellant was the only
female in the truck, that the purse was located atop the portion of the seat on which she
sat, that no evidence of record suggests Shorty carried a purse or wore feminine garb, that
no evidence suggests Shorty exerted or claimed to exert some aspect of control over or
an interest in the purse, and that appellant claimed ownership of the purse. Under these
circumstances, we cannot but say that the search of the purse was improper. 

 It is true that third parties may give consent to search the property of another. But,
for the consent to be valid, the third party must have standing to dispute the search; and,
that is something the State must prove. May v. State, 582 S.W.2d at 851. In other words,
the State must establish that the third party had a legitimate expectation of privacy in or
had authority to jointly use the item searched. Id.; accord Maxwell v. State, 73 S.W.3d
278, 281-82 (Tex. Crim. App. 2002) (stating that third persons may give valid consent to
search when they exercise equal control over and have authority to use the premises being
searched); Boyle v. State, 820 S.W.2d 122, 143 (Tex. Crim. App. 1989), cert. denied, 503
U.S. 921, 112 S.Ct. 1297, 117 L.Ed.2d 520 (1992) (holding the same and recognizing that
the rule is applicable to motor vehicle searches as well). If it fails in that regard, then the
search cannot be justified on the basis of consent. And, since the State failed to prove
here that Shorty had a legitimate privacy interest in, exercised equal control over, or had
the authority to jointly use the purse, the officers could not use his consent to justify their
search of it. May v. State, 582 S.W.2d at 851-52. 

 Consequently, we hold that the trial court abused its discretion in denying appellant's
motion to suppress. And, given that the improper search resulted in the discovery of the
contraband underlying her conviction, we are unable to say, beyond reasonable doubt, that
the trial court's decision was harmless. So, its order denying appellant's motion to
suppress and its judgment manifesting appellant's conviction are reversed, and the cause
is remanded for further proceedings.


 Brian Quinn

 Justice


Publish.
1. The officer did state that it was his "common practice . . . [to] tell the passenger to come on out, that
we are going to search the vehicle." Yet, to assign this testimony any weight would require us to infer that
appellant was in the car after Shorty consented to its search and when the officer attempted to act upon that
consent. Yet, the sole witness had already testified that he did not recall where appellant was in relation to
the vehicle at the time. So, without knowing whether she was in or out of it, one cannot reasonably infer that
the officer acted pursuant to his "common practice" when others are in a car about to be searched. And, this,
in turn, denudes the evidence of that practice of all weight. 



ly: Arial"> Additionally, Bank argued that it had priority to payments made on accounts created
by the sale of Tri-State's consigned goods under section 9.114. (5) However, the express
language of section 9.114 indicates that its application is limited to, "A person who delivers
goods under a consignment which is not a security interest and who would be required to
file under this chapter by Subsection (c)(3) of Section 2.326 . . . ." (emphasis added). A
consignor that can establish that its consignment met one of the section 2.326(c)
exceptions other than the filing exception contained in (c)(3) is not required to file a
financing statement to protect its ownership interest in the consigned goods. See In re
Alper-Richman Furs, Ltd., 147 B.R. 140, 149 (Bankr. N.D. Ill. 1992). (6) Thus, as we have
previously determined that a genuine issue of material fact exists regarding whether Tri-State met the section 2.326(c)(2) exception, we cannot determine whether section 9.114
has any application to Tri-State's claims.

CONCLUSION

 Having found that a genuine issue of material fact exists as to whether Panhandle's
creditors generally knew that Panhandle was substantially engaged in selling the goods of
others, we reverse the summary judgment and remand the cause for further proceedings.




 Mackey K. Hancock

 Justice



1. Acts 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2377,
amended by Acts 1999, 76th Leg., R.S., ch. 414, § 2.16, 1999 Tex. Gen. Laws 2739, 2739. 
As the 1999 amendments to section 2.326 are not applicable to this case, all further
references to "section 2.326" or "§ 2.326" will be references to the pre-amendment
provision.
2. Acts 1973, 63rd Leg., R.S., ch. 400, § 5, 1973 Tex. Gen. Laws 997, 1006, repealed
by Acts 1999, 76th Leg., R.S., ch. 414, § 1.01, 1999 Tex. Gen. Laws 2639, 2658. As the
events giving rise to this case occurred prior to the 1999 repeal of section 9.114, all further
references to this provision will be by reference to "section 9.114" or "§ 9.114."
3. The exceptions, as applicable to this case, are found in section 2.326(c), which
provides, "Where goods are delivered to a person for sale and such person maintains a
place of business at which he deals in goods of the kind involved, under a name other than
the name of the person making delivery, then with respect to claims of creditors of the
person conducting the business the goods are deemed to be on sale or return . . . . 
However, this subsection is not applicable if the person making delivery

 (2) establishes that the person conducting the business is generally known by his
creditors to be substantially engaged in selling the goods of others, or

 (3) complies with the filing provisions of the chapter on Secured Transactions
(Chapter 9)."
4. On appeal, Bank takes the position that the consignment was not deemed a sale
or return by section 2.326 because Tri-State filed a financing statement. See § 2.326(c)(3). 
However, this argument does not comport with the argument presented to the trial court
in Bank's motion. To preserve an issue for appellate review, all theories in support of or
opposition to a motion for summary judgment must be presented to the trial court in writing. 
See Casso v. Brand, 776 S.W.2d 551, 553 (Tex. 1989). Therefore, we will limit our review
to a determination of whether the arrangement between Tri-State and Panhandle would
constitute a deemed sale or return under section 2.326.
5. We note that section 9.114 is inapplicable to a "consignment" that is deemed a sale
or return by section 2.326. However, we will construe Bank's argument under section
9.114 as being made in the alternative. 
6. "[A]s against the consignee's creditors, the consignor who fails to file a financing
statement has priority to the consigned goods if [another] of the § 2-326(3) exceptions
applies; otherwise, § 9-114 applies, and the consignee's secured creditors have priority. 
This view is in accord with the Uniform Commercial Code's mandate against reading its
provisions to render other provisions meaningless. See § 1-104. The majority of courts
considering the issue have also adopted this view. See, e.g., In re State Street Auto Sales,
81 B.R. 215, 217-18 [(Bankr.D.Mass. 1988)] (§ 9-114 should be limited to situations where
the other exceptions to § 2-326(3) do not apply, noting that 'most courts and
commentators' have so held); Matter of Great American Veal, Inc., 59 B.R. 27, 32
(Bankr.D.N.J.1985) (§ 9-114 does not apply where other exceptions to § 2-326(3) do); In
re Lebus-Albrecht Lumber Co., 38 B.R. 58, 61 (Bankr.D.N.D.1984) (same)."