COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
  
 THE STATE OF TEXAS,
  
                            
 Appellant,
  
 v.
  
 LAKENDRICK MARKESSE ROGERS,
  
                            
 Appellee.
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
    
  '
 
  
 
 
  
  
                   No. 08-10-00119-CR
  
 Appeal from the
  
 County
 Criminal Court No. 6
  
 of
 Tarrant County, Texas
  
 (TC# 1185570) 
  
 
 


O P I N I ON








The State of Texas appeals from an order
granting a motion to suppress in favor of Lakendrick Rogers.

                                                         FACTUAL
SUMMARY

            Ronnie
McCoy, an Arlington police officer, responded to a burglary dispatch one
afternoon at the apartment of Joyce Davison and her sons, Bryant and Glen, who
are mentally-challenged.[1]
 Bryant=s
cell phone had been taken the day before and Appellee’s brother, Xavier, called
Bryant and told him that Appellee had the phone.  Xavier told Bryant that they were going to
pick him up and take him to Appellee to retrieve the phone.  Xavier and Jarvis Abbott arrived at Bryant=s apartment and told him they were
going to meet Appellee at the Albertson=s
store down the street.  Bryant then left
with them.  At the same time, Glen left
the apartment unlocked while he went to pick up the mail.  Xavier and Jarvis drove around while they
waited for Appellee.  After a while,
Xavier said that Appellee could not meet them after all because he had to take
the car home to their mother and they drove Bryant back to his apartment.  When he went in the apartment, Bryant
discovered that a laptop computer, a Wii game console, an XBox game console,
and the controllers had been taken. 
Bryant and Glen told McCoy that Xavier and Appellee were staying with
Jarvis.  








            A
few hours later, McCoy obtained an address for Jarvis and he went to that
residence at 10:00 p.m. that same night. 
McCoy rang the doorbell and he saw someone look through the blinds but
no one answered the door.  Undeterred,
McCoy knocked on the door for seven to ten minutes until Jarvis opened the
door.  Jarvis invited the officers in
because it was cold.  Jarvis stated that
he was at home alone, but after a few minutes of conversation, Jarvis= brother walked into the living
room.  McCoy asked if anyone else was
there and Jarvis= brother
stated that both Appellee and Xavier were there.  After McCoy got both Appellee and Xavier to
come into the living room, he and Jarvis walked into a bedroom to talk
privately about the burglary report.  As
they talked, McCoy heard a Acommotion@ under the bed and discovered that
Jarvis= sister
was hiding under the bed.  The sister
told McCoy that she had just spoken to their mother, LaSondra Degrate, and she
was on her way home.  While they waited
for her, Jarvis told McCoy that he already knew why the officers were there
because Bryant had been sending text messages stating that Appellee had broken
into his apartment.  Degrate arrived in a
few minutes and McCoy told her they were investigating a residential burglary
and that Jarvis was one of the suspects. 
Degrate became upset with Jarvis and she gave McCoy consent to search
her home.  

            McCoy
and Jarvis walked into his bedroom to begin the search.  Jarvis told McCoy that any stolen property
would probably be in Appellee=s
backpack.  As he conducted the search,
McCoy looked under the bed and saw a number of items.  He asked Jarvis what was under the bed.  Jarvis began pulling items from beneath the
bed and he handed the officer a backpack, stating that it was Appellee=s backpack.  McCoy was unsure whether to believe Jarvis
because he had lied to the officer earlier. 
McCoy opened the backpack and found the items taken in the
burglary.   After being given his Miranda
warnings, Appellee admitted that it was his backpack but he denied knowing how
the stolen property came to be placed in the backpack.

            Appellee
filed a motion to suppress the evidence on the grounds that the consent was
invalid.  The trial court granted the
motion.

STANDING

            The
State raises eleven points of error in its challenge of the trial court=s ruling on the motion to
suppress.  In Points of Error Three and
Four, the State asserts that Appellee lacks standing to contest the
search.  Additionally, in Point of Error
Nine, the State challenges the trial court=s
legal conclusion that Jarvis Abbott did not have joint control or joint use of
Appellee=s backpack.








            The
Fourth Amendment guarantees A[t]he
right of the people to be secure in their persons, houses, papers, and effects,
against unreasonable searches and seizures . . . .@  U.S.Const.
Amend. IV. Any defendant seeking to suppress evidence obtained in violation of
the Fourth Amendment must first show that he personally had a reasonable
expectation of privacy in the property searched.  Oliver v. United States, 466 U.S. 170, 177, 104
S.Ct. 1735, 1740‑41, 80 L.Ed.2d 214, 223 (1984); Kothe v. State, 152 S.W.3d
54, 59 (Tex.Crim.App. 2004), citing Rakas v. Illinois, 439 U.S. 128, 139, 99 S.Ct. 421,
433, 58 L.Ed.2d 387 (1978).  The Fourth
Amendment does not protect the merely subjective expectation of privacy, but
only those expectations that society is prepared to recognize as
reasonable.  Oliver, 466 U.S. at 177.  To carry his burden, an accused must prove
that:  (1)  by his conduct, he exhibited an actual
subjective expectation of privacy, i.e., a genuine intention to preserve
something as private; and (b) circumstances existed under which society was
prepared to recognize his subjective expectation as objectively
reasonable.  Villarreal v. State, 935 S.W.2d 134, 138
(Tex.Crim.App. 1996), citing Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct.
2577, 2580, 61 L.Ed.2d 220 (1979).  The
following factors are relevant to a court=s
determination of whether the accused=s
subjective expectation was one that society was prepared to recognize as
objectively reasonable: (1) whether the accused had a property or possessory
interest in the place invaded; (2) whether he was legitimately in the place
invaded; (3) whether he had complete dominion or control and the right to
exclude others; (4) whether, before the intrusion, he took normal precautions
customarily taken by those seeking privacy; (5) whether he put the place to
some private use; and (6) whether his claim of privacy is consistent with
historical notions of privacy.  Villarreal, 935
S.W.2d at 138.  This list of factors is
not exhaustive, however, and none is dispositive of a particular assertion of
privacy; rather, we examine the circumstances surrounding the search in their
totality.  Id.  Although we defer to the trial court=s factual findings, we review the legal
issue of standing de novo.  Kothe, 152 S.W.3d at
59.  








            The
State contends that Appellee does not have standing to complain about the
search of the house because the evidence failed to show he was anything other
than a casual visitor and Degrate=s
unlimited consent to search permitted the search of the backpack.  An overnight guest in someone=s home has a legitimate expectation of
privacy.  Minnesota v. Olson, 495 U.S. 91, 98, 110 S.Ct.
1684, 1689, 109 L.Ed.2d 85 (1990); Luna v. State, 268 S.W.3d 594, 603
(Tex.Crim.App. 2008).  That expectation
of privacy is controlled to a significant degree by the wishes of the host and
a host may diminish the guest=s
expectation of privacy by permitting the police to search the premises.  Granados v. State, 85 S.W.3d 217, 222-25
(Tex.Crim.App. 2002).  While an overnight
guest has a reasonable expectation of privacy, one who is merely present on the
premises with the consent of the owner does not.  Minnesota v. Carter, 525 U.S. 83, 90, 119 S.Ct.
469, 473, 142 L.Ed.2d 373 (1998); see Calloway v. State, 743 S.W.2d 645, 650 (Tex.Crim.App.
1988)(guest who had no possessory or proprietary interest in premises, and no
clothes or other belongings in the house, was a mere guest and did not have a
reasonable expectation of privacy).  The
evidence showed that Appellee was present at night but that is insufficient to
prove that he was an overnight guest.  See
Taylor v. State, 995
S.W.2d 279, 282 (Tex.App.‑-Texarkana 1999)(holding that the defendant was
not overnight guest even though he was present at night), pet. dism=d as improvidently granted, 55 S.W.3d 584 (Tex.Crim.App.
2001).  Consequently, he failed to
establish that he has standing to contest the search of the premises.

            Appellee
readily concedes that he does not have standing with respect to the consensual
search of the home, but he argues that he does have a reasonable expectation of
privacy in his backpack.  The State
argues that since Degrate provided the police with an unlimited consent to
search the premises, Appellee does not have standing to contest the search of
his backpack.  The distinction drawn by
Appellee is valid.  The Fourth Amendment
protects people, not places.  Katz v. United States,
389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).  Whether Degrate=s
consent to search extended to the backpack goes to the merits of the search
issue and must be considered apart from the issue of standing.  In determining standing, our focus must be on
whether Appellee had a reasonable expectation of privacy in the place or thing
searched, which in this case is the backpack. 
See Stockvis v.
State, 147 S.W.3d 669, 671 (Tex.App.--Amarillo 2004, pet. ref=d)(defendant did not have standing to
contest search of vehicle in which she was a passenger but she did have
reasonable expectation of privacy in her purse); Stone v. State, 147 S.W.3d 657, 659-60
(Tex.App.--Amarillo 2004, pet. ref=d)(defendant,
as a passenger, did not have reasonable expectation of privacy in the vehicle,
but she had a reasonable expectation of privacy in her purse).








            It
was undisputed at the suppression hearing that Appellee claimed the backpack as
his property when Officer McCoy asked him if it was his.  McCoy testified that both Jarvis and his
sister, DaShonda, told him that Appellee regularly carried the backpack and
always had it with him.  While the evidence
showed that Jarvis knew the backpack was hidden under his bed and contained
stolen property, and Jarvis retrieved the backpack from beneath the bed at the
officer=s
request, there is no evidence that Jarvis claimed ownership in the backpack or
ever used it.  To the contrary, Jarvis
made sure the officer knew that it was Appellee=s
backpack.  A backpack, like a purse, is
intended as a repository of personal effects. 
See Stockvis,
147 S.W.3d at 671 (purse); Wilson
v. State, 99 S.W.3d 767, 770 (Tex.App.‑-Houston [14th Dist.] 2003,
pet. ref=d)(purse
and backpack).  Consequently, a general
expectation of privacy in this type of container is reasonable.  Wilson, 99 S.W.3d at 770.  Under these facts, we find that Appellee had
a reasonable expectation of privacy in his backpack.  Points of Error Three, Four, and Nine are
overruled.

SEARCH OF THE BACKPACK

            In
Points of Error One, Two, Five, Six, Seven, and Eight, the State challenges the
merits of the trial court=s
order granting the motion to suppress. 
The State maintains that Degrate=s
unlimited consent authorized the search of all containers in the home,
including the backpack, and the trial court erred by considering whether
Degrate had actual authority or apparent authority to consent to a search of
the backpack.[2]

Standard of Review

            We
apply a bifurcated standard of review when considering the trial court=s ruling on a motion to suppress.  Hubert v. State, 312 S.W.3d 554, 559
(Tex.Crim.App. 2010).  At a suppression
hearing, the trial judge is the sole trier of fact
and judge of credibility of the witnesses and the weight to be given to their
testimony.  St. George v. State, 237 S.W.3d 720, 725
(Tex.Crim.App. 2007).  As such, the trial
judge may choose to accept or reject any or all of the testimony offered.  Amador v. State, 221 S.W.3d 666, 673
(Tex.Crim.App. 2007);  Peralta v. State, ‑‑‑
S.W.3d ‑‑‑‑, 2010 WL 4851388 (Tex.App.‑-El Paso
2010, no pet.).  Accordingly, we will
defer to the trial court=s
express or implied determination of historical facts.  Hubert, 312 S.W.3d at 559.   The issue whether a third party had actual
authority to consent to a search of another=s
property and whether a law enforcement officer was reasonable in finding that a
third party had apparent authority to consent are mixed questions of law and
fact which are reviewed de novo.  Id.

Consent Exception to
Warrant Requirement

            Under
the Fourth and Fourteenth Amendments to the United States Constitution, a
search conducted without a warrant is per se unreasonable.  Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93
S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). 
Consent to search is one of the well‑established exceptions to the
constitutional requirements of both a warrant and probable cause.  Id. at 219; Hubert, 312 S.W.3d at 560.  Whether it is reasonable under the Fourth
Amendment for an officer to rely on consent is a question which we determine by
examining the totality of the circumstances. 
Hubert, 312
S.W.3d at 560; Maxwell
v. State, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002).








            Even
when an individual voluntarily consents to a search, an officer=s authority to perform the search is
not without limit. DuBose
v. State, 915 S.W.2d 493, 496 (Tex.Crim.App. 1996), overruled on other
grounds by Guzman v.
State, 955 S.W.2d 85 (Tex.Crim.App. 1997); May v. State, 582 S.W.2d 848, 851 (Tex.Crim.App.
[Panel Op.] 1979).  The extent of the
search is limited to the scope of the consent given, and the scope of the
consent is generally defined by its expressed object.  DuBose, 915 S.W.2d at 496; see Florida v. Jimeno, 500
U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297, 303 (1991).  The standard for measuring the scope of
consent is that of “objective” reasonableness‑-what would the typical
reasonable person have understood by the exchange between the officer and the
individual?  Valtierra v. State, 310 S.W.3d 442, 448-49
(Tex.Crim.App. 2010), citing Jimeno, 500 U.S. at 251, 111 S.Ct. at 1803‑04.  Consent to search a space generally includes
consent to search containers within that space. 
See Jimeno,
500 U.S. at 251, 111 S.Ct. at 1804.  The
State has the burden of showing that the search was conducted within the scope
of the consent received.  See Malone v. State, 163
S.W.3d 785, 798 n.6 (Tex.App.--Texarkana 2005, pet. ref=d).

            In
this case, Officer McCoy informed Degrate that he was searching for a laptop
computer, an Xbox game console and a Wii game console.  Those are items which could be stored inside
various containers, including a backpack. 
Thus, her consent certainly included any containers, such as a backpack,
where those items might be found.  The
State contends that this is the end of the inquiry and there should be no
further consideration of whether Degrate had actual authority or apparent authority
to consent to a search of Appellee=s
backpack.  We disagree because the scope
of consent is distinct from actual authority and apparent authority to
consent.  These issues were squarely
placed before the trial court by Appellee=s
motion to suppress and the evidence presented at the suppression hearing.

Actual Authority and
Apparent Authority








            A
third party can consent to a search to the detriment of another=s privacy interest if the third party
has actual authority over the place or thing to be searched.  Hubert, 312 S.W.3d at 560.  The third party may, in his own right, give
valid consent when he and the absent, non-consenting person share common
authority over the premises or property. 
Id., citing United
States v. Matlock, 415 U.S. 164, 169-70, 94 S.Ct. 988, 992-93, 39 LEd.2d 242
(1974).  Although property interests are
relevant to this determination, the commonality of authority to consent is not
determined solely by the law of property. 
Id., citing United
States v. Matlock, 415 U.S. at 171 n.7. 
Instead, common authority is shown by mutual use of the property by
persons generally having joint access or control for most purposes, so that it
is reasonable to recognize that any of the co-inhabitants has the right to
permit the inspection in his own right and that the others have assumed the
risk that one of their number might permit the common area to be searched.  Id., citing United States v. Matlock, 415 U.S. at 171 n.7.  A defendant who has thus assumed the risk
that another may permit a search of their shared property or premises may not
complain of that search under the Fourth Amendment.  Hubert, 312 S.W.3d at 560.  The reviewing court determines actual
authority to consent using an objective standard:  would the facts available to the officer at
the moment of the search warrant a man of reasonable caution in the belief that
the consenting party had authority over the premises and its contents.  Illinois v. Rodriguez, 497 U.S. 177, 188, 110 S.Ct.
2793, 2801, 111 L.Ed.2d 148 (1990).  If
not, then warrantless entry without further inquiry is unlawful unless
authority actually exists.  Id. at
188-89.








            Even
if the third party lacks actual authority, the search may be valid under the
apparent authority doctrine.  When an
officer reasonably, though erroneously, believes that a third party purporting
to provide consent has actual authority over the place or thing to be searched,
apparent authority exists and the purported consent from the third party can
serve to make the search reasonable.  Hubert, 312 S.W.3d at
561.  Under the apparent authority
doctrine, an officer conducting a consent search must make reasonable inquiries
when “ambiguous circumstances” arise.  McNairy v. State,
835 S.W.2d 101, 105 (Tex.Crim.App. 1991). 
Thus, when confronted with a situation that does not reasonably appear
to be included within the consent obtained, the searching officer must stop and
make inquiries as to the continued effectiveness of the consent.  Id.

            The
burden is on the State to show that the person who consented to the search had
actual or apparent authority.  Hubert, 312 S.W.3d
at 561.  To meet its burden, the State
must provide evidence that a third party either had mutual access to and
control over the place that was searched, or that the officers conducting the
search reasonably believed facts provided to them by a third party that would
have been legally sufficient to justify a search as reasonable.  Id. at 561-62.  Under the Fourth Amendment, the State must
show by a preponderance of the evidence that it was reasonable for the officers
to proceed on the information they had.  Id.
at 562.








            The
evidence showed, and the trial court found, that Jarvis retrieved Appellee=s backpack from beneath his bed and
handed it to the officer, stating that it was the backpack which Appellee carried.  The evidence also showed that McCoy, at that
moment, did not necessarily believe Jarvis regarding ownership of the backpack
because he had been untruthful with the officer throughout their encounter that
evening.  While Degrate had actual
authority to consent to a search of the premises for the stolen property,
Jarvis=
statement would have raised a question in the mind of a reasonable person
whether Degrate had actual authority to consent to a search of the
backpack.  At the very least, Jarvis= statements presented the officer with
ambiguous circumstances which obligated him to stop and make inquiries as to
the continued effectiveness of Degrate=s
consent with respect to the backpack.

            We
conclude that the State failed to prove that Degrate had either actual or
apparent authority to consent to the search of Appellee=s
backpack.  See May, 582 S.W.2d at 852
(consent of the passenger to search the vehicle which belonged to his parents
did not extend to a lunch box which the officer knew belonged to the
defendant).  Because the State failed to
establish a valid exception to the warrant requirement, the trial court did not
err by granting the motion to suppress. 
We overrule Points of Error One, Two, Five, Six, Seven, and Eight.  Given our disposition of these issues, it is
unnecessary to address Points of Error Ten and Eleven.  We affirm the judgment of the trial court.

 

                                                                        GUADALUPE
RIVERA, Justice

April 11, 2012

 

Before McClure, C.J., Rivera, J., and Antcliff, J.

 

(Do Not Publish)











[1]  McCoy testified that Bryant and Glen were “20
something” years of age.  The record does
not reflect the ages of Appellee, his brother Xavier, or of Jarvis Abbott.





[2]  Most of the State’s issues are based on
Fourth Amendment principles, but the second and eleventh points of error are
based on Article I, Section 9 of the Texas Constitution.  State and federal constitutional claims
should be argued in separate grounds, with separate substantive analysis or
argument provided for each ground.  Muniz
v. State, 851 S.W.2d 238, 251‑52 (Tex.Crim.App. 1993); Heitman v.
State, 815 S.W.2d 681, 690‑91 n. 23 (Tex.Crim.App. 1991).  Although the state and federal constitutional
claims have been raised in separate points of error, the State=s brief does not include separate argument and
authority addressing how the protection provided by Article I, Section 9
differs from the protection provided by the Fourth Amendment.  Muniz, 851 S.W.2d at 251‑52; Heitman,
815 S.W.2d at 690‑91 n.23.  Because
the State has inadequately briefed the points of error related to Article I,
Section 9, nothing is presented for our review. 
See Muniz, 851 S.W.2d at 251‑52; Tex.R.App.P. 38.1(i).  Our analysis is therefore restricted to the
Fourth Amendment.