

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00232-CR

---

MYRANDA SHAY MANLEY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 274th District Court
Hays County, Texas
Trial Court No. CR-18-1164-C, Honorable Gary L. Steel, Presiding

---

March 24, 2023

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Following a plea of not guilty, Appellant, Myranda Shay Manley, was convicted by a jury of possession of a controlled substance in an amount of one gram or more but less than four grams, a third-degree felony.[1]  Punishment was assessed by the trial court at ten years' confinement and a $500 fine, suspended for ten years.  By a sole issue,

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.115(c).

Appellant maintains the trial court committed reversible error in denying her motion to suppress evidence seized from her purse.[2] We reverse and remand.

## BACKGROUND

Deputies Wahlert and Vega from the Hays County Sheriff's Office were dispatched to a home in Kyle, Texas, regarding a complaint of drug use on the premises by persons who were not authorized to be in the home. Once at the home, they observed a van associated with a known fugitive, Dennis Smith. Other deputies were called for backup. The tenor of the interaction shifted on learning of Smith's possible presence in the home, and Deputy Wahlert sought to search inside the home for Smith. He encountered Appellant at the front of the residence and asked her for consent to search. She declined, noting that she was not the homeowner but had been staying there with permission from the lawful resident. The deputies then contacted the lawful resident, Aric McReynolds, by phone and asked him to come to the residence and allow them to search for Smith— and only Smith. No request was made by the deputies to search for drugs during this initial search.

McReynolds consented to the request and the deputies searched the home. The deputies did not find Smith but found another individual sleeping in a bedroom. Deputy Wahlert woke the individual and informed him he was looking for Smith. The individual was asked to go into the living room so he could be searched by another deputy. That deputy discovered the individual had an outstanding warrant and arrested him. Pursuant

---

[2] Originally appealed to the Third Court of Appeals this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Third Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

to a search incident to the arrest, the deputy found a small amount of methamphetamine on him. Based on this find and an odor of methamphetamine inside the house, deputies shifted their focus to a second search of the home—this time for drugs. Deputies Wahlert and Vega were unaware of the search incident to arrest and were still searching for Smith in the adjacent bedroom.

The search of the home was pursued by several different methods: consent from Appellant, consent from McReynolds, and an attempt to obtain a search warrant. The deputies spent considerable time on the phone pursuing a warrant but eventually abandoned that strategy. The deputies asked McReynolds, who at this point, had left the residence, to return and consent to a second search. Notably, this tactic was pursued after Deputy Wahlert was informed by Corporal McNiel, that any search premised on Appellant's consent would have to be performed in her presence to afford her the opportunity to limit the parameters of the search. Once informed of this, Deputy Wahlert switched from pursuing Appellant's consent and instead focused on getting McReynolds to return to the home. While McReynolds was on his way, and Deputy Wahlert and Corporal McNiel were still on the phone with someone regarding the search, they asked Deputy Vega to ask Appellant for consent to search. Deputy Vega approached Appellant and inquired: "Do you give us consent to go ahead and search inside the house, again?" Neither drugs nor her purse was mentioned during the exchange.

Appellant reaffirmed that she did not believe she could consent to a search because she was not the homeowner then stated, "I don't give a damn." Based on this brief exchange, Deputy Vega informed the other deputies that Appellant had consented to a search of the home. Despite this purported authorization, the deputies did not begin

3

the search; rather, they waited until McReynolds returned and obtained a second consent from him. Once McReynolds arrived at the house, Deputy Wahlert told him that Appellant was "denying, denying, denying" consent and that is why he had been asked to return. As opposed to the vague search request made to Appellant, the deputies made clear to McReynolds that they wanted to search the house for drugs.

Deputy Wahlert escorted McReynolds inside the home to observe the search. Appellant, however, was not taken inside during this search. Wahlert performed an extensive search, looking in multiple areas and containers—including, eventually, Appellant's purse. Wahlert never asked McReynolds for permission to search the purse and no one disputed that by the time of this search, Wahlert knew the purse belonged to Appellant.[3] While searching the purse, Wahlert located a smaller clutch purse inside, opened it and found the contraband for which Appellant was eventually charged and convicted of possessing.

Appellant moved to suppress the evidence,[4] but the trial court overruled the request and filed findings of fact and conclusions of law in support of its decision. Notable

_____

[3] Wahlert rummaged through the purse during the first search, which was limited to searching for Smith, and found Appellant's identification, which he ran through dispatch. While not important to our resolution here, Wahlert denied, or did not remember, physically manipulating the contents of the purse even though the video evidence clearly shows his hand in the purse. The trial court found Wahlert's testimony was "credible" despite this obvious contradiction between his testimony at the suppression hearing and the indisputable video evidence.

[4] The State contends that because Appellant did not raise an illegal detention in her written motion to suppress, she waived any argument on that issue. However, when counsel re-urged the motion to suppress at trial, he argued as follows:

They never did find him in the house, but that's the way it starts out: very aggressive with the defendant and threating [sic] to arrest her. And in two separate events she is told by two separate officers to sit tight.

Objectively, any reasonable person would have viewed that she was not free to leave. And, in fact, there is even an event where she and another person are both there at the

4

among the trial court's legal conclusions: "McReynolds['s] authority for the search included the defendant's purse inside the house" and Appellant "freely, knowingly, and voluntarily gave consent to search the house."

## APPLICABLE LAW—MOTION TO SUPPRESS

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). The ruling is also reviewed under a bifurcated standard of review. *See Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018) (citing *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016)). "At a motion to suppress hearing, the trial judge is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their testimony." *Lerma*, 543 S.W.3d at 190 (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)). "Therefore, we afford almost complete deference to the trial court in determining historical facts." *Lerma*, 543 S.W.3d at 190 (citing *Carmouche*, 10 S.W.3d at 327). "When a trial judge makes express findings of fact, an appellate court must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record." *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017) (citing *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010)). "The appellate

---

same time and one person is told, "You're free to leave." She is not told that . . . any person objectively would view this as not being free to leave.

The argument presented notified the trial court of Appellant's complaint that she interpreted the comments and conduct of the deputies as a detention. Preservation of error does not require specific words. To avoid procedural default, all a party has to do is "let the trial judge know what he wants, why he thinks he is entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009) (citing *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). We find Appellant's argument that she was illegally detained was preserved but given our disposition on the argument that her purse was illegally searched, we need not address the detention argument.

5

court then proceeds to a de novo determination of the legal significance of the facts as found by the trial court—including the determination of whether a specific search or seizure was reasonable." *Rodriguez*, 521 S.W.3d at 8 (citing *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004)). Whether a third party had authority to consent to the search of another's property is a mixed question of law and fact we review de novo. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). Lastly, we also review de novo "indisputable visual evidence" from videotape. *State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013).

The Fourth Amendment guarantees people the right "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. The touchstone of the Fourth Amendment is reasonableness. *State v. Villarreal*, 475 S.W.3d 784, 795 (Tex. Crim. App. 2014) (citation omitted). The rights secured by the Fourth Amendment are personal, and accordingly, an accused has standing to challenge the admission of evidence obtained by an unlawful search or seizure only if the accused had a legitimate expectation of privacy in the place invaded. *See State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013) (citing *Rakas v. Illinois*, 439 U.S. 128, 139, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978)).

When, as here, a search is conducted without a warrant and the defendant seeks to suppress evidence based on a Fourth Amendment violation, the defendant bears the burden to overcome a presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). If the defendant meets that burden by establishing that the search occurred without a warrant, the burden shifts to the State to

prove that the search was reasonable under the totality of the circumstances. *Id.* at 672–73.

**ANALYSIS**

Appellant's sole complaint is that the trial court abused its discretion in denying her motion to suppress because the search of her purse was illegal. Both the State and Appellant have devoted considerable portions of their briefs arguing the consent issue. We agree the consent, or lack thereof, is dispositive, but our focus is on the scope of the consent as opposed to questions of credibility, voluntariness, or whether Appellant was detained. Our inquiry revolves around two interrelated questions, both dealing with the scope of McReynolds's and Appellant's purported consents:

> (1) Did McReynolds have authority to consent to a search of Appellant's purse?

> (2) Did Appellant's response to Deputy Vega's generalized request to search the house "again" amount to specific consent to search the contents of her purse?

A warrantless search is presumed unreasonable but consent is one valid exception to the warrant requirement. *Carmouche*, 10 S.W.3d at 331. The consent must be shown to be positive and unequivocal, and there must not be any duress or coercion. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985). The showing that a suspect has been warned that he does not have to consent to the search and has a right to refuse is a factor of consideration when determining whether consent was valid. *Meeks,* 692 S.W.2d at 510.

7

A third party may consent to a search when that party has equal control over and authority to use the place being searched. *Stokvis v. State*, 147 S.W.3d 669, 672 (Tex. App.—Amarillo 2004, pet. ref'd) (citing *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002)). If that proposition fails, the search cannot be justified on the basis of consent. *Stokvis*, 147 S.W.3d at 672 (finding abuse of discretion in the denial of a motion to suppress after finding that consent to search did not extend to a purse belonging to another with a legitimate expectation of privacy).

A purse is intended as a general repository of personal effects and its owner has a legitimate expectation of privacy in it and its contents. *Wilson v. State*, 99 S.W.3d 767, 770 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). Simply leaving one's purse in an area being searched by law enforcement does not equate to relinquishment of one's privacy interest in the same. As we previously stated in *Stokvis*, we are not "prepared to say that a female must either carry her purse on her person at all times or place it under lock and key as a condition of retaining her privacy interest." *Stokvis*, 147 S.W.3d at 671.

Here, McReynolds confirmed Appellant had permission to stay in his house and she informed the deputies she had been staying there on and off for a few weeks. She advised the deputies the purse belonged to her. The State did not prove McReynolds exercised equal control over or had any authority to jointly use Appellant's purse. McReynolds's consent for the second search of the house did not negate Appellant's expectation of privacy in her purse. *See May v. State*, 582 S.W.2d 848, 852 (Tex. Crim. App. 1979) (holding that passenger's consent to search a vehicle which belonged to his parents did not extend to a lunch box which the officer knew belonged to the defendant). The record is devoid of any evidence that McReynolds exercised real or apparent

8

authority over Appellant's purse simply by virtue of its presence in his home. The trial court conflated authority to search a commonly occupied area (a bedroom) with authority to search unshared personal effects in that same bedroom. Appellant was the only female in the home. A purse, by its nature, could not have been reasonably believed to be the common property of both her and McReynolds. Absent some evidence he exercised authority over the purse, the State could not have relied on McReynolds's consent. The record contains none, so we find, as we must, that the State failed to carry its burden with respect to McReynolds's authority to consent to a search of Appellant's purse.

Next, we determine if Appellant consented to a search of her purse. The resolution of this question turns on the request made by Deputy Vega when he asked Appellant to consent to a search of the house "again." Consent to enter a residence does not, in and of itself, provide consent for a police officer to search the entire residence or specific objects within the home. *Valtierra*, 310 S.W.3d at 448. The constitutionally permissible scope of a consent-based search is restricted by the expressed objectives of law enforcement when seeking the consent. *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011). The Texas Court of Criminal Appeals has stated that, as in many areas, context is key:

> If police rely on consent as the basis for a warrantless search, "they have no more authority than they have apparently been given by the consent." It is therefore "important to take account of any express or implied limitations or qualifications attending that consent which establish the permissible scope of the search in terms of such matters as time, duration, area, or intensity."

*Weaver*, 349 S.W.3d at 526 (citations omitted).

9

To determine the scope of a suspect's consent under the Fourth Amendment, we utilize the standard of objective reasonableness. We ask "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* (citing *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991)). For instance, in *Jimeno*, the Court held a general request to search a vehicle for drugs would put the objectively reasonable person on notice that his consent would include permission to search containers within the vehicle for drugs. *See Jimeno*, 500 U.S. at 251 ("[law enforcement] had informed Jimeno that he believed Jimeno was carrying narcotics, and that he would be looking for narcotics in the car. We think that it was objectively reasonable for the police to conclude that the general consent to search respondents' car included consent to search containers within that car which might bear drugs"). So, the question here becomes whether the typical reasonable person in Appellant's situation understood Deputy Vega's request to search the house "again" to extend to a search of her purse and for drugs?

Taking "account of any express or implied limitations or qualifications attending that consent which established the permissible scope of the search" we note that what Deputy Vega was referring to when he said "again" was the first search—the search for a fugitive. Deputy Vega never mentioned drugs nor a purse when he asked for the subsequent consent. And, while its certainly reasonable to assume that Appellant knew at this point that the deputies wanted to look for drugs in the house, they *did not expressly mention it* when they asked for consent. And, our inquiry focuses on the totality of the circumstances of this particular interaction from the point of view of the objectively reasonable person, without regard for the subjective thoughts or intents of either the

10

officer or the citizen. *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). Neither can we say Deputy Vega implied a desire to search for drugs, he simply asked to search the house again. The implication of "again" being that they were searching for the fugitive a second time. It is not clear and unequivocal from Deputy Vega's interaction with Appellant that drugs, or her purse, were objectively reasonable targets of the sought-after consent. And, just as the deputies' first search was limited by the scope of consent to places that could potentially hide a fugitive, the second search was likewise limited by the objectively reasonable understanding of the second request—to search the house "again" for a fugitive. The pointlessness of that request, given that they had already determined Smith was not in the house, could understandably lead to the type of response it elicited from Appellant— "I don't give a damn."

The State was required to carry the burden of proof with regard to establishing that Appellant voluntarily consented to the search of her *purse*, not the house*.* The State's burden is by clear and convincing evidence. *Valtierra*, 310 S.W.3d at 448. Clear and convincing evidence is "the degree of proof that will produce in the mind of the trier of fact a firm belief or conviction about the truth of the allegations sought to be established." *Rodriguez v. State*, No. 02-17-00283-CR, 2018 Tex. App. LEXIS 3728, at *9–10 (Tex. App.—Fort Worth May 24, 2018, no pet.) (mem. op., not designated for publication) (citing *Weller v. State*, 184 S.W.3d 787, 790 (Tex. App.—Beaumont 2006, no pet.)). Given that no deputy asked to search the purse or asked to search the house for drugs—which would have reasonably included a search of containers that could contain drugs (like a purse) we cannot say with firm belief or conviction that the objectively reasonable person would have interpreted Deputy Vega's general request to search the house a second time

11

as a request to specifically search Appellant's purse. And, because the deputies chose not to take Appellant into the house to observe the search or limit its parameters, we cannot say she implicitly approved the search by her inaction. The State cannot combine Appellant's consent to search the house again for a fugitive with McReynolds's consent to search the house for drugs and his eventual lack of objection to the search of the purse, to satisfy the requirements for clear and convincing evidence of voluntary consent to search a specific container. An amalgamation of the two does not satisfy the burden; rather, the State must show either Appellant consented to the search of her purse by words or actions or a third party with actual or apparent authority over the purse did so. Although we generally defer to a trial court's findings of fact, those facts, when applied to the law, do not support the trial court's legal conclusions. We find no support in the record that McReynolds had actual or implied authority to consent to a search of the purse. We also find no support in the record that Appellant consented to a search of her purse or, alternatively, a search of the house for drugs. We do not address whether Appellant voluntarily consented to the search because assuming, for the sake of argument, that she did consent to a search of the house, the scope of that search was limited to a search for Smith. Because the record does not support that McReynolds legally could, or Appellant actually did, consent to the search of the purse, the trial court abused its discretion in denying her motion to suppress.

We acknowledge that our conclusion of an unlawful seizure of evidence is not *per se* cause to reverse a conviction. *See Wyss v. State*, No. 03-07-00515-CR, 2008 Tex. App. LEXIS 6654, at *13 (Tex. App.—Austin Sept. 5, 2008, no pet.) (mem. op., not designated for publication) (citing *Lyles v. State*, 582 S.W.2d 138, 143 (Tex. Crim. App.

12

1979)).  Instead, the sanction for such unlawful seizure is the exclusion of the evidence obtained.  *Id.*  The erroneous admission of evidence obtained in violation of the Fourth Amendment requires a harm analysis under the constitutional standard of Rule 44.2(a) of the Texas Rules of Appellate Procedure.  TEX. R. APP. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001).  The illegal search of Appellant's purse led to the discovery of the methamphetamine that resulted in her conviction.  With the evidence being introduced against her, we cannot say beyond a reasonable doubt that the error was harmless and did not contribute to her conviction.  Appellant's sole issue is sustained.

## CONCLUSION

The trial court's judgment is reversed and the cause is remanded to the trial court for further proceedings.


Alex L. Yarbrough
Justice


Do not publish.

Parker, J., concurs in the result.

13